UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MINH TRIEU DOAN,<br><br>                      Plaintiff,<br><br>   v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>                      Defendant. | Case No. 16-cv-00841-BAS-AGS<br><br>**ORDER:**<br><br>**(1) OVERRULING DEFENDANT'S OBJECTIONS (ECF No. 39);**<br><br>**(2) ADOPTING REPORT AND RECOMMENDATION (ECF No. 38);**<br><br>**(3) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 16);**<br><br>**(4) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 22); AND**<br><br>**(5) REMANDING ACTION FOR FURTHER PROCEEDINGS** |

Plaintiff Minh Trieu Doan commenced this action seeking review of the Social Security Commissioner's denial of his application for Supplemental Security Income under Title XVI of the Social Security Act.[1] The Court referred this matter to the magistrate judge for a Report & Recommendation ("R&R") in accordance with 28 U.S.C. § 636(b)(1)(B) and Civil Local Rule 72.1(c)(1). After the parties filed cross-motions for summary judgment, U.S. Magistrate Judge Andrew G. Schopler issued an R&R recommending that this Court grant Plaintiff's motion (ECF No. 16) and deny the Commissioner's motion (ECF No. 22). (ECF No. 38.) The Commissioner then filed objections to the R&R, to which Plaintiff has replied. (ECF Nos. 39, 40.)

For the following reasons, the Court **OVERRULES** the Commissioner's objections, **ADOPTS** the R&R, **GRANTS** Plaintiff's motion, **DENIES** the Commissioner's motion, and **REMANDS** this action for further proceedings consistent with this order.

## I. BACKGROUND

### A. First Administrative Hearing

On July 19, 2010, Plaintiff submitted an application for Supplemental Security Income under Title XVI of the Social Security Act. (Administrative Record ("AR") 172–76.) The Social Security Administration denied Plaintiff's application because it determined "he was not a United States citizen, national, or eligible alien at the time of his application." (AR 89.) After Plaintiff unsuccessfully sought reconsideration of this decision, he requested a hearing before an Administrative Law Judge ("ALJ"). (AR 90.)

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. She is therefore substituted as Defendant in this suit for former Acting Commissioner Carolyn W. Colvin. *See* Fed. R. Civ. P. 25(d); 20 C.F.R. § 422.210(d) (stating that where an action for judicial review of a final decision by the Commissioner is instituted "the person holding the Office of the Commissioner shall, in his [or her] official capacity, be the proper defendant").

On February 4, 2011, the Social Security Administration sent Plaintiff's counsel a letter acknowledging that it had received Plaintiff's request for a hearing. (ECF No. 40-1.)[2] This letter encloses a list of exhibits and asks Plaintiff to "submit the following information: a. All medical records not already in file." (*Id.*) The attached exhibit list reveals one medical record is "already in" Plaintiff's file. (*Id.*) It identifies Exhibit No. 15 as a ten-page "Psychological Evaluation from Lessner, Milton PhD dated 8/21/10." (*Id.*)

On September 19, 2011, Plaintiff appeared at a hearing before ALJ James S. Carletti. (AR 89.) After the hearing, the ALJ issued a fully-favorable decision. (AR 84–88.) In his order, the ALJ reports that: "The record now contains a Permanent Resident card . . . with [Plaintiff]'s picture. The card states that [Plaintiff] has been a resident since November 22, 1993, and that the card expires on March 30, 2012." (AR 90.) Thus, after concluding there is no reason for him to doubt the authenticity of Plaintiff's Permanent Resident card, the ALJ finds that Plaintiff "has the legal status to be eligible to receive Title 16 disability benefits if he is found to be disabled under the Social Security Act." (*Id.*)

Having resolved this threshold issue, the ALJ then notes that Plaintiff's counsel requested at the hearing "that [the ALJ] make a determination on [Plaintiff]'s disability." (AR 90.) The ALJ further notes, however, that "the record only contains a psychological report dated August 21, 2010, from Dr. Lessner (Exhibit 15)." (*Id.*)

//

---

[2] Plaintiff first provided a copy of this letter in responding to the Commissioner's objections to the R&R. (*See* ECF No. 40-1.) In light of the unusual circumstances of this case, the Court will consider the Administration's letter for several reasons. First, the Court has already accepted supplemental information from the Commissioner regarding the record for Plaintiff's disability claim. (*See* ECF Nos. 35, 36.) Second, the letter is consistent with other evidence in the record, and its contents help rebut the charge made in the Commissioner's objections that Plaintiff has failed to establish good cause for belatedly resubmitting a medical report. Third, even though the Administration's letter bolsters the Court's conclusion below, the Court would reach the same outcome even if it did not consider the letter.

It is worth pausing here. This is the second time Dr. Lessner's August 21, 2010, psychological report has manifested. But, as will be seen, "[t]his is the case of the incredible vanishing report." (R&R 1:25.) The Court will refer to Dr. Lessner's psychological report that is referenced in both the Administration's exhibit list and the ALJ's 2011 order as the "Lessner Report."

Returning to the ALJ's decision, upon recognizing that the medical record only contains the Lessner Report, the ALJ finds "that medical development has not been done in this case." (AR 90.) He therefore remands "the case to the District Office and California State Agency for the development of [Plaintiff]'s medical disability issues." (*Id.*)

## B. Further Administrative Proceedings

After this remand, the Social Security Administration further considered Plaintiff's application for disability benefits. On March 20, 2012, several months after the ALJ's decision discussed above, a disability claims examiner found Plaintiff is not disabled. (AR 66–72.) In the "Disability Determination Explanation," the examiner lists the medical evidence that was considered. (AR 68–69.) Missing from this list, however, is the vanishing Lessner Report.[3] (*See* AR 68.)

Plaintiff requested reconsideration of the examiner's decision. (AR 92.) On December 21, 2012, a disability claims examiner again found Plaintiff is not disabled. (AR 73.) As before, the new examiner listed the medical evidence that was considered. (AR 75–77.) This time, there is an entry for Dr. Lessner. (AR 76.) Yet, it appears the entry does not correspond with the Lessner Report. (*See* AR 76–79.) The entry instead appears to correspond with a request for medical records the Administration sent to Dr. Lessner on October 31, 2012. (*See* AR 279–81.) Dr.

---

[3] Several of the items on this evidence list are identified as being from an "Unknown Name." (AR 68–69.) It appears, however, that the Lessner Report was not masquerading as one of these "Unknown Name" items based on the other descriptors included for each item on the list. (*See id.*)

Lessner signed the request, but he apparently did not return any medical records with the Administration's form. (*See id.*) However, at the same time, Dr. Lessner perplexingly did not complete the form's following relevant entry:

> **_____ THIS REQUEST IS BEING RETURNED. WE DO NOT HAVE THE INFORMATION REQUESTED. PLEASE PROVIDE DATE LAST SEEN: _____.**

(AR 281.)

### C. Second Administrative Hearing

Plaintiff requested another hearing before an ALJ to challenge the adverse disability determination. (AR 106.) Plaintiff appeared for a hearing on August 27, 2013, before ALJ Carletti. (AR 14, 31.) ALJ Carletti is, of course, the same ALJ who presided over Plaintiff's first hearing and previously noted that "the record only contains a psychological report dated August 21, 2010, from Dr. Lessner (Exhibit 15)." (AR 90.) In commencing the second hearing, the ALJ admits evidence as follows:

| | | |
|---|---|---|
| AJL: | | We have proposed exhibits in the medical section, 1-4F and in the E section 1-12E. We have also noted the documents in the A, B, and D sections. Any objections to those documents? |
| Pl.'s Att'y: | | No. |
| ALJ: | | Okay. We'll get those admitted. |
| | | (Exhibits in sections A, B, D, 1F through F, and 1E through 12E, previously identified, were received into evidence and made a part of the record thereof.) |

(AR 32.) The Lessner Report is missing from this list of admitted exhibits. (*See id.*; *see also* AR 25–28 (identifying exhibits).)

Later in the hearing, Dr. Robert McDevitt, an independent medical expert, testifies by phone. (AR 31, 56.) Although Dr. McDevitt's telephonic testimony is often disjointed and unclear, it is damaging to Plaintiff. (*See* AR 56–59.) He questions whether there is medical evidence to support Plaintiff's claimed head injury, and he indicates Plaintiff's claimed level of functioning is inconsistent with his social activities. (*See id.*)

After the ALJ concludes his examination of Dr. McDevitt, he initially provides Plaintiff's counsel, Ms. Manbeck, an opportunity to question the doctor:

| | |
|---|---|
| ALJ: | Okay, Ms. Manbeck, do you have any questions for the doctor? |
| Pl.'s Att'y: | Doctor, the date that he applied for disability is July 2010. So you can opine from that period forward? |
| Dr. McDevitt: | I don't think any without -- there's available, 1998 through that period Henderson about in -- Henderson was only relying on -- just told him and had records -- really that doesn't document very clearly what he has done to help this man. If he is actually impaired every two months is not very helpful and they have that he goes out with friends and claims [INAUDIBLE] so it contradicts the fact that he's fairly adept. |
| Pl.'s Att'y: | Well, I am referring you to the evaluation of the Lessner Office [phonetic]- |
| ALJ: | He doesn't have that, Ms. Manbeck. He just gave it to me this morning. |
| Pl.'s Att'y: | I am talking about for Lessner, your honor. He has it. It is Exhibit 15. |

(AR 60.)

Plaintiff's counsel and the ALJ then proceed to go back-and-forth regarding the Lessner Report and whether it is in the record. (AR 61–65.) The ALJ admonishes Plaintiff's counsel for not raising this issue when the ALJ admitted exhibits at the start of the hearing. (AR 61.) Plaintiff's counsel responds that she has a copy of the Lessner Report on a CD, that she reviewed it in the lobby, but that she is having trouble accessing the CD on the equipment in the hearing room. (*Id.*) She continues:

> Pl.'s Att'y: It's right here, your honor, but all I am saying is that I cannot open it on this machine and I need help. I need help, somebody for to open, so then I can refer to the doctor.
>
> ALJ: Well, I am sorry. It's too late to ask for help now. There's -- it's B1 through B4. The only report is a report from Dr. Cedrick and Dr. Henderson.

(AR 61.) After more exchanges between the ALJ and Plaintiff's counsel, the ALJ decides to terminate Plaintiff's counsel's opportunity to examine Dr. McDevitt and to dismiss the witness:

> ALJ: Okay. Doctor, we are just going to end the hearing right now because there is just too much confusion as to what Ms. Manbeck's agreed these are the exhibits and now she has a different CD that I have no idea what she has. I know you don't have it, so it doesn't matter what she has, because you have no opportunity to review it. So I'll thank you for your testimony today and I'll let you know what we're going to do in the future.

(AR 62.) The ALJ then adjourns the hearing:

> ALJ: Ms. Manbeck, this hearing is -- we are going to end this hearing and we are either going to continue to do something else.
> . . . .
> So we'll continue the hearing and we'll figure out what to do next . . . .

(AR 63–64.)

### D. The ALJ's Decision

The ALJ never reconvened the hearing. Instead, he issued a written decision denying Plaintiff's claim for benefits a few weeks later. (AR 14–24.) But it turns out other doctors—unlike Dr. McDevitt—had reviewed the Lessner Report. In the ALJ's summary of the medical evidence, he notes that "Dr. Miller reported that he reviewed a report by Dr. Milton Lessner, PhD, dated August 21, 2010." (AR 18.) The ALJ then recounts Dr. Miller's summary of the Lessner Report, including Dr. Lessner's comments that Plaintiff "appeared to be unemployable due to his dysfunctional capacity" and that testing of Plaintiff "showed signs of delusions and hallucinations, emotional turmoil, anxiety and depression." (*Id.*) In the analysis portion of his decision, the ALJ also notes that "Dr. Miller recounted the findings from an alleged report by Dr. Lessner, but a request for records to Dr. Lessner was returned, indicating no records were available." (AR 21.)

Further, the ALJ mentions that another doctor, Dr. Henderson, "also relied on an alleged report by Dr. Lessner." (AR 22.) Then, although the Lessner Report has apparently vanished and is not available to the ALJ, the ALJ comments that the report "contain[s] only subjective complaints and conclusory statements, without objective testing or supporting psychiatric treatment records." (*Id.*) He proceeds to "give[ ] no weight to Dr. Lessner's alleged medical report, because it apparently was a one-time

examination, contains only subjective complaints and conclusory statements, and is not in evidence despite attempts by the state agency and counsel to obtain the alleged report." (*Id.*)

Finally, the ALJ discusses the testimony offered by Dr. McDevitt—the independent expert who Plaintiff's counsel had started to question before the ALJ abruptly terminated the hearing. (AR 23.) After summarizing Dr. McDevitt's adverse testimony, the ALJ points out that:

> "Dr. McDevitt had an opportunity to review the claimant's *entire medical record* and listen to his sworn testimony. Additionally he was given the opportunity to question the claimant and *was subject to cross examination by the claimant's counsel*."

(*Id.* (emphasis added).) The ALJ then relies on Dr. McDevitt's adverse testimony. (*Id.*) Hence, he finds Plaintiff does not have a severe impairment or combination of impairments. (*Id.*) The ALJ therefore concludes Plaintiff is not disabled under the Social Security Act. (AR 24.)

Plaintiff appealed the ALJ's decision to the Social Security Administration's Appeals Council, arguing that he was denied due process. (AR 7–8.) The Appeals Council denied Plaintiff's request for review (AR 1–3), and this action seeking judicial review of the Commissioner's final decision followed.

**E.  The R&R**

After hearing oral argument on the parties' cross-motions for summary judgment, Judge Schopler issued an R&R recommending that this Court grant Plaintiff's motion for summary judgment, deny Defendant's cross-motion, and remand this action for further proceedings. (R&R 6:14–20.) As will be explored below, the R&R concludes that the ALJ denied Plaintiff due process by cutting off his counsel's brief examination of Dr. McDevitt.

## II. LEGAL STANDARDS

### A. Review of the R&R

The court reviews *de novo* those portions of the R&R to which objections are made. 28 U.S.C. § 636(b)(1). It may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* But "[t]he statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc); *see also Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) (concluding that where no objections were filed, the district court had no obligation to review the magistrate judge's report).

### B. Review of a Denial of Social Security Benefits

The Social Security Act permits any applicant for social security disability benefits to obtain judicial review of the Commissioner's final decision in federal district court. 42 U.S.C. § 405(g). However, "[a]s with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Thus, the district court "will disturb the denial of benefits only if the decision 'contains legal error or is not supported by substantial evidence.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)).

"Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Trevizo v. Berryhill*, 862 F.3d 987, 996 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The ALJ—not the court—is responsible for making credibility determinations, resolving conflicts in medical testimony, and otherwise resolving evidentiary ambiguities. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.

1989). Therefore, "[i]f the evidence can reasonably support either affirming or reversing a decision, [the court] may not substitute [its] judgment for that of the Commissioner." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

In making its determination, the court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo*, 862 F.3d at 997 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The court's scope of review is limited, as it "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he [or she] did not rely." *Id.* (quoting *Garrison*, 759 F.3d at 1010).

## III. ANALYSIS

The Commissioner objects to the R&R. She predominantly disagrees with Judge Schopler's interpretation of the record and his conclusion that the ALJ denied Plaintiff due process by cutting off Plaintiff's counsel's examination of the independent medical expert, Dr. McDevitt. (Objs. 2:3–8:15.) Having conducted a *de novo* review of the R&R, the Court will resolve each of the Commissioner's objections.

### A. The Story of the Missing Report

In his R&R, Judge Schopler finds that the Lessner Report went missing in between Plaintiff's first administrative hearing in 2011 and his second administrative hearing in 2013. (R&R 1:25–2:8.) He also observes that it appears the Social Security Administration "converted [Plaintiff]'s case from paper to an electronic file" in between these hearings, which may explain the report's disappearance. (*Id.* 2:11–12.)

The Commissioner quibbles with this interpretation of the record, claiming it is "not fully accurate." (Objs. 3:2–5:3.) In doing so, the Commissioner seeks to paint

a picture of two underlying administrative proceedings—not one. (*Id.* 3:23–4:2.) She relies on a declaration from an administrative records employee who states Plaintiff's "non-disability matter resulting in a November 2011 decision was a separate file from Plaintiff's disability claim underlying this action." (Chung Decl. ¶ 3, ECF No. 35-1; *see also id.* ¶ 5 (referring to Plaintiff's purported "non-disability case"). Whereas the "non-disability matter" was "a paper file with paper exhibits," the employee states the "record for this civil action is based on an electronic record." (*Id.* ¶¶ 5–6.) The Commissioner then relies on this stratification of the administrative proceedings to assail Judge Schopler's interpretation of the record. (Objs. 4:3–5:3.)

The Court rejects this characterization. There was only one matter before the Social Security Administration: Plaintiff's July 19, 2010, application for Supplemental Security Income under Title XVI of the Social Security Act. (AR 172–76.) As detailed above, the Administration initially denied Plaintiff's application because it found he was ineligible to receive benefits based on his residency status. (AR 89.) After the ALJ reversed this decision, he "remanded" the "case" to the Administration for factual development. (AR 90.) He did not direct Plaintiff to file a new application for disability benefits or to open a new "matter" with the Administration. Nor did the ALJ tell Plaintiff he had to resubmit everything already in the record, including the Lessner Report, to the Administration. After all, both of the ALJ's decisions refer to this matter as "In the Case of [Plaintiff]'s claim for Supplemental Security Income," and Plaintiff's social security number is used as the only "claim number" throughout the Administration's files. (AR 14, 89.)

Moreover, although the Commissioner repeatedly chastises Plaintiff throughout her motion for summary judgment and objections for not resubmitting "his copy" of the Lessner Report, (*see* Def.'s Mot. 6:9–11), she largely ignores the evidence demonstrating Plaintiff had provided the Administration with a copy of the

report to begin with.[4] The ALJ states in his first decision that the "record . . . contains a psychological report dated August 21, 2010, from Dr. Lessner (Exhibit 15)." (AR 90.) Because the Commissioner has not demonstrated this statement was incorrect, the Court holds her to it. Further, the Court notes that prior to the first hearing, the Administration provided Plaintiff's counsel with an exhibit list that identified the Lessner Report as being "Exhibit 15" in his file. (ECF No. 40-1.)

Notwithstanding these references to the Lessner Report, the Commissioner argues that "the only logical explanation for the lack of Dr. Lessner's report in the electronic record before the ALJ is that Plaintiff never submitted it during the medical development of his disability case, which was primarily Plaintiff's burden." The Commissioner overreaches. Other logical explanations include that the Administration did not include everything from its "paper file" in its "electronic file," or that the Administration simply lost the Lessner Report inadvertently.[5] As Judge Schopler notes, "We may never learn how the Lessner report pulled this disappearing

---

[4] The Commissioner tries to misdirect the Court throughout her objections, including by: (1) suggesting Plaintiff's counsel "handpicked" doctors who provided incorrect reports, (Objs. 2:11–13); (2) focusing on only whether Plaintiff submitted the report after the ALJ's first decision, as opposed to also addressing whether Plaintiff provided the report to the agency beforehand, (*see id.* 2:15–17); (3) speculating that the Lessner Report is a forgery, (*id.* 6:12–15); and (4) again impugning Plaintiff's doctors because Plaintiff "paid for [their] reports" and Plaintiff's counsel "has elicited reports from [them] in multiple other social security cases," (*id.* 8:6–8). The last charge is particularly surprising given that the Commissioner employs a cadre of state-appointed consultative examiners in countless disability determinations.

The Court sets these arguments aside because they do not resolve the issue at hand. Upon remand, if the Commissioner desires to still pursue some of these claims, including her theory that the Lessner Report is a forgery, she is free to do so. For example, she may subpoena Dr. Lessner to testify regarding the report's contents and its authenticity. *See* 42 U.S.C. § 405(d); *see also* 20 C.F.R. § 416.1450(d) ("When it is reasonably necessary for the full presentation of a case, an administrative law judge or a member of the Appeals Council may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses and for the production of . . . documents that are material to an issue at the hearing.").

[5] The Court observes that some of the items included in the Administration's "paper file" did manage to also make it into the "electronic file," including Plaintiff's application for disability benefits, his appointment of his counsel as his representative, his request for reconsideration of the initial denial of his eligibility for benefits, and the ALJ's first decision. (*Compare* ECF No. 9-1 at 2, *with* ECF No. 40-1 at 4.)

act." (R&R 2:9–10.) But the Commissioner's continued disavowal of the report's existence is unsustainable in light of the information before this Court.

Thus, because the Court agrees with Judge Schopler's interpretation of the record, the Court overrules the Commissioner's objection to the R&R.

### B. Denial of Due Process

The lynchpin of the R&R is Judge Schopler's recommendation that the Court grant Plaintiff's motion for summary judgment because he was denied due process. (R&R 3:16–5:13.) The Commissioner objects to this conclusion, arguing that the ALJ did not abuse his discretion in cutting off Plaintiff's counsel's cross-examination of a key witness after a single question. (Objs. 7:4–8:15.)

"A claimant in a disability hearing is not entitled to unlimited cross-examination, but is entitled to such cross-examination as may be required for a full and true disclosure of the facts." *Copeland v. Bowen*, 861 F.2d 536, 539 (9th Cir. 1988) (citing *Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir. 1983)); *see also Hannah v. Larche*, 363 U.S. 420, 442 (1960) ("[W]hen governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process."). The ALJ has discretion to determine whether cross-examination is warranted, including the extent of the examination. *See id.*; *Solis*, 719 F.2d at 302. Consequently, the court reviews the ALJ's decision to deny or limit cross-examination for an abuse of discretion. *See Copeland*, 861 F.2d at 539; *Solis*, 719 F.2d at 302.

To demonstrate, as noted in the R&R, the Ninth Circuit held in *Solis* that it was an abuse of discretion to deny a claimant the opportunity to cross-examine a medical expert—even with written interrogatories as a substitute—"where the physician is a crucial witness whose findings substantially contradict the other medical testimony[.]" 719 F.2d at 301–02; *see also Bradley v. Barnhart*, No. C 01-01172 SI,

2002 WL 523584, at *6 (N.D. Cal. Apr. 2, 2002) (concluding the ALJ erred in denying the claimant the right to cross-examine an expert whose opinion the ALJ relied on in making his determination).

As summarized above, after Dr. McDevitt provided testimony that was damaging to Plaintiff and inconsistent with other medical evidence in the record, the ALJ ceded the witness to Plaintiff's counsel for questioning. (AR 56–60.) Plaintiff's counsel asked Dr. McDevitt whether he can opine from the date of Plaintiff's disability application. (AR 60.) After receiving a disjointed and muddled response from Dr. McDevitt, Plaintiff's counsel tried to ask him about the Lessner Report. (*Id.*) The ALJ immediately interjected, cutting off her line of questioning. (*Id.*) He then ultimately terminated the hearing, and Plaintiff never had the opportunity to meaningfully examine Dr. McDevitt.[6] (*Id.*)

The R&R highlights that Dr. McDevitt was a "crucial witness whose adverse testimony contradicted other evidence." (R&R 4:7–8.) And, because Plaintiff never had a meaningful opportunity to question Dr. McDevitt, including regarding "the all-important Lessner Report," the R&R concludes limiting Plaintiff "to such a meager inquiry was reversible error." (*Id.* 4:14–5:13.)

The Commissioner responds with an unconvincing attempt to undermine Judge Schopler's analysis. First, she claims the Lessner Report "was not a 'crucial' report." (Objs. 7:9–10.) In her view, the actual report was not "crucial" because "the record contained reports of other medical sources that repeated Dr. Lessner's findings," and the Commissioner argues the ALJ properly evaluated these reports "in the context of the overall evidence." (*Id.* 7:10–12.) In other words, the Commissioner

---

[6] The Court acknowledges that during the back-and-forth between the ALJ and Plaintiff's counsel regarding whether the Lessner Report was in the record, Plaintiff's counsel also managed to ask Dr. McDevitt, "Exhibit 15, do you have exhibit 15, doctor?" The doctor responded, "Nothing beyond B3F." (AR 60.) The existence of this additional question does not affect the Court's observation that Plaintiff lacked a meaningful opportunity to examine the doctor. Dr. McDevitt's response to this question simply confirmed what the ALJ already had stated—that Dr. McDevitt had not reviewed the Lessner Report. (*See* AR 60–61.)

believes the ALJ's "secondhand" review of the Lessner Report via its incorporation into other materials was sufficient in these circumstances.

The ALJ's decision demonstrates otherwise. In his order, the ALJ not only repeatedly discounts the Lessner Report by referring to it as an "alleged" report containing "alleged" findings, (AR 18, 21–22), but he also states that the report (i) "contain[s] only subjective complaints and conclusory statements," and (ii) lacks "objective testing," (AR 22). These statements are incorrect. The Lessner Report is not limited to "subjective complaints and conclusory statements"—it discusses five psychological tests Dr. Lessner conducted on Plaintiff. (ECF No. 16-2; *see also* AR 283 (providing treating physician Dr. Henderson "referred [Plaintiff] to Dr. Lessner for psychological evaluation and asked him to perform psychological tests for evaluation in conjunction with [Dr. Henderson's] psychiatric treatment"). Further, this testing is even mentioned in one of the medical reports the ALJ discusses in his order. (*See* AR 288 (summarizing Dr. Lessner's findings, including that "testing [of Plaintiff] showed signs of delusions and hallucinations, emotional turmoil, anxiety and depression and that he felt worthless").) Thus, the ALJ's decision demonstrates a "secondhand" review of the Lessner Report was insufficient for the ALJ to properly evaluate it, and the Court is unpersuaded by the Commissioner's position.

The Commissioner next attacks the R&R's analysis by disputing its conclusion regarding the adequacy of the cross-examination of Dr. McDevitt. The Commissioner argues that "[w]hile one question may seem like an inadequate number of questions for cross-examination and not the most ideal," Plaintiff's cross-examination of Dr. McDevitt was sufficient in these circumstances. (Objs. 7:15–24.) The Court appreciates the Commissioner's candor in recognizing that a single question on cross-examination may not seem "the most ideal." However, the Court disagrees with her conclusion that a single question was adequate in this case—it was not. Moreover, the ALJ abused his discretion in limiting Plaintiff's cross-examination "to such a meager inquiry." (R&R 5:12–13.) Further inquiry was necessary here because:

(1) Dr. McDevitt provided testimony that was adverse to Plaintiff; (2) Dr. McDevitt's response to Plaintiff's counsel's question was incomprehensible and partially inaudible; (3) the ALJ cut off Plaintiff's counsel's questioning while stating, "we'll continue the hearing," but he never reconvened the hearing; (4) Dr. McDevitt's testimony was contradicted by Dr. Lessner's findings and other doctors' reports, (5) the ALJ relied on Dr. McDevitt's testimony in denying Plaintiff's disability claim; and (6) the ALJ supported his reliance on Dr. McDevitt's testimony by quizzically stating that Dr. McDevitt "was subject to cross-examination by the claimant's counsel."

Accordingly, the Commissioner's objection to the R&R is overruled. The Court agrees with Judge Schopler's conclusion that the ALJ committed reversible error in denying Plaintiff a meaningful opportunity to cross-examine Dr. McDevitt.

### C. Development of the Record

In her remaining objection, the Commissioner disputes the R&R's observations regarding the Administration's independent duty to develop the record for Plaintiff's disability claim, arguing the agency satisfied its burden here. (Objs. 5:4–7:3; *see also* R&R 5:14–6:12.) Having already determined the ALJ committed reversible error, the Court need not consider this remaining objection. Nevertheless, because the Commissioner believes the issue raised in this objection influences the due process inquiry, (*see* Objs. 7:4–6), the Court will dispense with it.

"Social Security proceedings are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000) (Thomas, J.) (joined by three justices); *accord DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991) (citing *Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir. 1987)). Thus, "the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)); *see also Sims*, 530 U.S. at 111 ("It is the ALJ's duty to

investigate the facts and develop the arguments both for and against granting benefits.").

The R&R recognizes that both parties share part of the blame for the present predicament. Judge Schopler reasons that Plaintiff could have done more to satisfy his burden of furnishing medical evidence of a disability, including by ensuring the Lessner Report again made its way into the Administration's record before the Appeals Council adjudicated his appeal. (R&R 5:15–21, n.2.) At the same time, Judge Schopler notes that the ALJ should have accepted the report "at the hearing, or at least sought it out afterwards." (*Id.* 6:7–8.) Further, Judge Schopler finds that the Social Security Administration's attempts to obtain the Lessner Report, including it sending a records request form to Dr. Lessner that was returned incomplete, were insufficient in these circumstances. (*Id.* 6:8–12.)

The Court agrees that the Administration's effort was inadequate for those reasons highlighted in the R&R. The points raised in the Commissioner's remaining objection do not persuade the Court otherwise. The Commissioner cites to an unpublished Ninth Circuit case, *Bell v. Berryhill*, No. 15-55853, 2017 WL 2347238 (9th Cir. May 30, 2017), to support the proposition that the Administration satisfies its duty to develop the record where it contacts the claimant's doctors for medical evidence, but the doctors reply that they do not have records concerning the claimant. (Objs. 6:16–26.) Although such an effort may have been sufficient in that case, the same effort was inadequate here. The ALJ's first opinion states the Administration's record includes the Lessner Report, putting the Administration on notice that there was additional evidence relating to Plaintiff's disability claim that needed to be evaluated. Multiple other reports before the Administration also discussed the Lessner Report, again indicating to the agency that it should re-obtain and evaluate the report. Further, the ALJ terminated Plaintiff's cross-examination of Dr. McDevitt because the expert had not reviewed the Lessner Report, telegraphing that the hearing

would continue once the expert was able to review it. Yet, no further effort was made to reacquire the report.

In sum, in light of the inquisitorial nature of disability proceedings, the Administration's independent duty to develop the record, and the circumstances that unfolded before and after Plaintiff's second hearing, the Administration should have made a further effort to reacquire the Lessner Report. Consequently, the Court overrules the Commissioner's remaining objection. That being said, the denial of due process discussed above will serve as the basis for the Court's remand of this action.

### III. CONCLUSION

In light of the foregoing, the Court **OVERRULES** the Commissioner's objections (ECF No. 39). The Court **APPROVES AND ADOPTS** the R&R in its entirety (ECF No. 38). Accordingly, the Court **GRANTS** Plaintiff's motion for summary judgment (ECF No. 16), **DENIES** Defendant's motion for summary judgment (ECF No. 22), and **REMANDS** this case for further proceedings consistent with this order.

**IT IS SO ORDERED.**

DATED: September 29, 2017

Hon. Cynthia Bashant
United States District Judge